# Decision Notice and Finding of No Significant Impact

## Snowmass Ski Area Master Plan Amendment Ski Area Improvements

USDA Forest Service
Aspen Ranger District
White River National Forest
Pitkin County, CO

An Environmental Assessment which discusses the Aspen Skiing Company's (ASC's) proposal to implement several projects contained in the "Proposed Conditions" section of the 2003 Snowmass Mountain Master Plan Amendment (Snowmass Master Plan) has been completed. The EA, and all associated documents, are available for public review at the Aspen Ranger District in Aspen, CO.

This Decision Notice (DN) supercedes a previous Decision Notice signed March 29, 2005 by Aspen District Ranger Wallace Westbrook. The original DN was rescinded April 28, 2005 due to an unrelated internal Forest Service review on the appropriate delegation of authority for National Environmental Policy Act (NEPA) decision document signatures for long-term Special Use Permits.

This DN documents my current decision. It is based on the site-specific environmental analysis of the elements proposed in the "Snowmass Master Plan Amendment and Ski Area Improvements" Final Environmental Analysis (Final EA) prepared for this project, public comments, information contained in the 1994 Final Environmental Impact Statement and Record of Decision for the Snowmass Ski Area (1994 Snowmass EIS and ROD), and other documented information found in the project record.

It is imperative to note that the prevailing guidance for my decision ties directly to the "8.25 - Ski Areas" management area direction contained in the 2002 Revised White River National Forest Land and Resource Management Plan (Forest Plan). The Final Environmental Impact Statement prepared for the implementation of the Forest Plan extensively evaluated environmental consequences of the selected alternative that resulted in the management area prescriptions subsequently prescribed in the Forest Plan, including the 8.25 management area prescription.

The selected alternative for the EA was developed in conformance with Forest Plan direction, and is fully consistent with the purpose of management area 8.25, which is to "provide winter sports activities and other intensively managed outdoor recreation opportunities for large numbers of national and international visitors in highly developed settings."

**INTRODUCTION**

The stated purpose of ASC's proposed actions is to enhance and expand downhill skiing opportunities within the Snowmass Ski Area permit boundary. National Forest System land within the permit boundary is specifically allocated to ski area related outdoor recreation activities in the Forest Plan. The proposed actions all conceptually fulfill stated goals and objectives disclosed in ASC's Snowmass Master Plan, as well as the "Desired Condition" outlined in the 8.25 management area prescription in the Forest Plan.

*Project Area*

The project area is located entirely within the Snowmass Ski Area permit boundary, as depicted in Figure 1 in the Final EA, and is located within the Aspen Ranger District, White River National Forest, Pitkin County, Colorado.

*Purpose and Need*

The *purpose* of the proposed actions is to site-specifically design and implement on-mountain improvements that will improve skiing-related opportunities, and continue to provide a high-quality skiing and snowboarding experience that is responsive to evolving customer preferences for downhill skiing and improvements in equipment technology.

Specific purpose statements include:

- Provide a viable skier/snowboarder return route from the eastern most portions of the Snowmass permit area (Burnt Mountain) to existing lift access on the Two Creeks lift, and also provide a dependable downhill and uphill winter access route for emergency evacuation situations.
- Further develop Burnt Mountain skiing/snowboarding terrain previously analyzed and approved in the 1994 Snowmass EIS and associated Record of Decision.
- Provide a single ski lift delivery system for the Big Burn skiing POD by replacing and re-aligning the existing lift systems.
- Reduce lift infrastructure needs by removing the existing Big Burn and Sheer Bliss lifts and replace them with a new Big Burn single-stage detachable lift.
- Provide direct, high-speed lift access to the Big Burn skiing POD from the Alpine Springs portion of the ski area.
- Up-grade older technology lifts with newer, more dependable lift systems.

The *need* of the proposed actions is closely tied to the purpose of such actions. Modernization of lift delivery systems most often relates to more user-friendly and safer loading and un-loading situations, reduced maintenance costs, better availability to replacement parts, and further refined rider safety systems.

Additional skiing/snowboarding terrain in a semi-backcountry type of area (Burnt Mountain) provides a product that has become increasingly more popular with the advent of new wider and shorter skis, the growing popularity of snowboarding, and a new propensity for "adventure" skiing/snowboarding.

Providing quality lift served skiing and riding terrain, while at the same time reducing the number of lift facilities reduces operating costs, and at the same time reduces "hard" impacts to public land.

*Proposed Action*

The original ASC proposal was to implement three main ski area improvement projects to address the specific purpose and need elements described in the Final EA. All of the proposals are contained within the Snowmass Master Plan. Due to supplemental information reports (SIR) made available in the first release of the Final EA, the decision made in the 1994 Snowmass ROD for the Sam's Knob Express Lift and associated Summit Re-grade project was reaffirmed, and was approved for implementation by means of the 2005 Snowmass Summer Construction Plan. As such, this previous decision is not part of the decision to be made in this DN. The remaining proposed actions are as follow:

*1) Burnt Mountain Traverse and Ski Trail Development*

One element of ASC's proposal was to construct a ski/snowboard traverse that would provide for skier egress from the eastern most portions of the Snowmass Permit Area (Burnt Mountain) back into the Long Shot ski trail, which terminates at the base of the Two Creeks Base Area. In conjunction with the traverse, ASC proposed to fully clear an additional ski trail, as well as perform some "select tree" glading to connect existing openings and provide for more continuous skiing/snowboarding terrain that would terminate at the intersection with the proposed traverse.

The constructed portions of the traverse would require some spot grading to level the prism of the skiing platform, with the combined lengths of all spot grading totaling approximately 500 feet in length. The remaining portions of the ski-way, approximately 2,700 lineal feet, would utilize an existing old roadbed/trail corridor. While these sections would not require any ground disturbance, they would require that additional trees be removed to provide a groomable ski/snowboard width of 30-40 feet. The final 1,200 feet of the egress route would incorporate existing fall-line, gladed skiing terrain, and would require only select tree removal to facilitate a width that would allow for grooming machine access to the traverse. The traverse and fall-line gladed ski terrain would also facilitate emergency evacuation missions.

*2) Big Burn Lift Replacement and Realignment*

Another element of the ASC ski area improvements proposal was to replace the Big Burn quad chair lift and Sheer Bliss fixed grip double lift with a single, high-speed detachable 6-passenger lift on a new alignment.

The bottom terminal of the proposed new lift would be located on the skier's right hand side of the Trestle ski trail, approximately 300 lineal feet to the east of the trestle bridge. The top terminal would be located approximately 200 feet to the east and +/- 20 vertical feet above the existing Big Burn lift unload elevation. Grading would be limited to that normally associated with top and bottom lift terminal construction, or approximately .5 acres for each site. The lift would be approximately 8,225 feet long, with a vertical rise of 2,085 feet, a ride time of 7.9 minutes, and an uphill capacity of 3,000 people per hour (PPH).

Additional work associated with this proposed project includes the widening of an existing ski access trail (old lift construction road) to connect the Green Cabin ski trail to the proposed bottom terminal area, and the modification of the trestle bridge to widen the skiable platform by up to 15 feet.

*Decision to be Made*

The decision made in this DN can select individual elements of any of the alternatives for approval as long as the singular and cumulative environmental impacts of the authorized elements are well within the range of all potential impacts analyzed and disclosed in the Final EA. The actual construction plans, construction schedule, and other implementation details will be addressed by the required annual submission of summer construction and operating plans, including site specific construction management plans.

*Authority for the Decision*

*General Management Direction*

In reviewing ASC's proposal and subsequent alternatives, I was required to ensure that any selected actions are consistent with management direction for National Forest System land within the ski area permit boundary, and that they are in the best interest of the general public. There are also numerous laws and regulations that require the agency to work with private industry to provide recreational opportunities, including downhill ski areas, on National Forest System land.

*National Forest Ski Area Permit Act*

The National Forest Ski Area Permit Act of 1986 (16 USC 497b; FSM 2700-92-13) authorizes the Forest Service to issue term ski area permits "…for the use and occupancy of suitable lands within the National Forest System for Nordic and alpine skiing operations and purposes" (Section 3(b)).

The Act also states that a permit "shall encompass such acreage as the Forest Service determines sufficient and appropriate to accommodate the permittee's needs for ski operations and appropriate ancillary facilities" (Section 3(b) (3)).

*Rocky Mountain Regional Guide*

It is the policy of the Forest Service in the Rocky Mountain Region (R2) to provide for the development of winter sports sites to meet public needs where such development is compatible with other resource values. It is also R2 policy to maintain the opportunity for expansion or construction of downhill skiing opportunities by the private sector. When the need is justified, existing permittees are allowed to expand to meet the skiing public's needs within the ski area permit boundary.

*Forest Plan*

Pursuant to Council on Environmental Quality regulations (CEQ 1502.20), this EA was prepared in compliance with the Forest Plan, and supports the goals and objectives of the Plan for ski area and resort development. The Forest Plan provides long-range management direction for NFS land administered by the White River National Forest. All uses of NFS land must be consistent with *management area prescriptions*, and all pertinent *objectives*, *standards,* and *guidelines* contained in the Forest Plan.

*Snowmass Ski Area Final Environmental Impact Statement and Record of Decision*

The 1994 Record of Decision for the Snowmass Ski Area authorized a variety of ski area improvements based on site-specific environmental analysis of activities and facilities proposed in the Final Environmental Impact Statement. Because of the extensive amount site specific and baseline information contained in the EIS, this EA was tiered to the EIS for much of the resource area analysis.

In those instances where previous decisions were made to approve similar proposed actions, this EA was used as an instrument to identify any supplemental information that was needed as a result of potential changed conditions since the 1994 approvals. These changed circumstances necessitated the preparation of a new Biological Assessment (BA), Biological Evaluation (BE), and Evaluation of Management Indicator Species (MIS) for the proposed projects. The determination of any new effects and/or impacts as they relate to previous approved actions is disclosed in these documents. The determination supports the decision made in this document.

*Snowmass Mountain Master Plan Amendment – 2003*

The Snowmass Ski Area Master Plan details existing conditions and proposed conditions envisioned for the ski area. While Master Plans do not always contain elements that have secured site-specific approvals, they do provide an overall vision, both graphically and through narrative, as to what the ski area is considering for the entire permitted area. This helps the Forest Service and other regulatory agencies in any site specific NEPA process to fully evaluate potential foreseeable future actions, or connected actions.

**DESCRIPTION OF THE DECISION**

*Selected Alternative*

I have fully reviewed the Final Environmental Assessment prepared for the Snowmass Ski Area Master Plan Amendment/Ski Area Improvements, along with the associated referenced documents that the EA tiers to.  After careful consideration of all information, applicable laws, Forest Plan direction, and public comments, *I have selected Alternative C in the Final EA, with some minor modifications.*

While this alternative differs from the proposal originally received from the Aspen Skiing Company, I feel that the individual aspects of Alternative C better meet the purpose and need of the proposed actions, and better address resource issues that were identified during the site specific analysis phase of the EA process.

*Burnt Mountain Traverse and Ski Trail Development*

With this decision, I am authorizing the Burnt Mountain Traverse and Ski Trial Development as detailed in Alternative C.  While the Biological Assessment addressed the potential impacts to lynx for full trail build-out on Burnt Mountain, I believe that a prudent approach to the development of skiing in the Burnt Mountain POD will provide more insight into the desired use patterns of the skiing/snowboarding public, thereby helping to better plan any future developments in the area.  Mitigation for the loss of Lynx winter foraging habitat will be required to occur prior to or concurrently with the implementation of the elements approved in this DN.

I believe that the modified location of the initial section of the Burnt Mountain Ski Traverse in Alternative C not only is designed to avoid future impacts to a wetland complex in the area, it will effectively eliminate current skier utilization of a path that transects the wetland complex and any associated impacts that are a result of such use.

Comments received on the release of the Draft Environmental Assessment raised a question on why the proposed Burnt Mountain Traverse's effect on an inventoried roadless area designation was not initially identified as an issue of concern and analyzed.  No external comments were received during two separate scoping periods identifying this issue.  Because of the limited amount of vegetation removal, the Interdisciplinary Team did not determine that the roadless character of the area would be affected, and therefore did not identify this as an issue of concern in the original analysis process. The potential effects of a Burnt Mountain Traverse were discussed in the Forest Plan Final EIS (3-483).  The project record for this EA does contain an inventoried roadless area briefing paper that provides information and associated maps discussing the Burnt Mountain roadless area.

None of the skiing terrain authorized for implementation within this Decision Notice would occur within the designated Inventoried Roadless Area (#76).

Approximately 1,300 feet of the approved Burnt Mountain Ski traverse route identified in Alternative C would exist within Roadless Area #76. This section of the modified ski traverse would require no ground disturbance, and due to existing tree spacing, would need only minimal tree removal. It remains within the special use permit boundary of the Snowmass Ski Area. Additionally, no roads are being proposed in the inventoried roadless area. In reviewing all available information, I am confident that the effects of the approved egress trail will not result in any substantial changes in the character of Inventoried Roadless Area #76.

*Big Burn Lift Replacement and Realignment*

With a modified replacement location of the Sheer Bliss lift as discussed in Alternative C, I believe that the purpose and need of the original proposal submitted by ASC will be better served, and result in fewer resource impacts with the construction of a lift in the Alternative C location. Keeping two lift systems to serve the Big Burn area will allow more operational flexibility, result in better overall distribution of skiers, and eliminate the need to construct ski-ways that would have been necessary with the lift scenario analyzed in Alternative B.

*Required Mitigation and Monitoring*

The Final EA tiers to a comprehensive discussion of specified and recommended mitigation measures in the 1994 Snowmass EIS. With this decision, I will adopt all the mitigation and monitoring practices listed in the 1994 Snowmass EIS "Mitigation and Monitoring Plan" that are relevant to the approved actions, unless they are in direct conflict with any standards and guidelines contained in the Forest Plan. By following these measures, I believe that all practicable means to avoid or minimize unnecessary environmental impacts will be exercised. I will also require that all mitigation measures recommended in the BA and BE be followed.

To respond to comments received in regards to the seasonal Forest Supervisor's Closure Order for the Burnt Mountain Area and Government Trail, I am requiring that the Aspen Skiing Company either provide adequate seasonal employees, or fund seasonal Forest Service employees, to ensure that area closure restrictions are enforced and effective between the time period of May 15- June 20 annually. This requirement is consistent with mitigation measure #2 listed on page II-73 in the 1994 Snowmass EIS.

To mitigate for the loss of Lynx winter foraging habitat, the Snowmass Ski Area will be required to implement conservation measures on the 43.35 acre spruce/fir stand on the eastern boundary of the permit area, identified by the WRNF RMRIS as Location 110504, Site 0012 (as approved by the USFWS). This lynx habitat improvement project will be required to occur prior to, or concurrent with, any of the approved actions affecting Lynx winter foraging habitat.

Site specific mitigation acreage requirements are as follow:
* Burnt Mountain Glading – 1 acre
* East Burnt Mountain Trail – 5.9 acres
* Burnt Mountain Traverse – 2.2 acres
* Sheer Bliss/Burn Lift – 1.1 acres                Total – 10.2 Acres

## RATIONAL FOR THE DECISION

My rationale for selecting Alternative C as modified is based on the following criteria:
1) the relationship to the Purpose and Need for the Proposed Action; 2) the relationship to issues identified both externally and internally; 3) consistency with applicable laws, regulations, and policies, and 4) field reviews of the proposed actions, and subsequent discussions with the Interdisciplinary Team Members and Aspen Skiing Company representatives.

1) *Purpose and Need* - The Selected Alternative responds well to the specific purpose statements contained in the Final EA. I believe that my decision to allow the projects described in Alternative C as modified to be implemented will meet the anticipated needs of both the skiing public and the Snowmass Ski Area more adequately than those contained in the original proposed action (Alternative B).

   I also feel that the changes made to the original ASC proposal that are outlined in Alternative C as modified better respond to potential resource issues that were identified during site specific field reviews.

2) *Issues* - Alternative C as modified will not adversely affect any of the key issues identified and analyzed in the EA.

   * Cultural Resources – Based on historical records, field inventories, and previous disturbances, the probability of uncovering any new historic or prehistoric sites during any ground disturbing activities approved in Alternative C is relatively low.

   * Watershed Resources – Alternative C as modified effectively avoids wetland impacts that would have occurred under Alternative B, the original Proposed Action. It also may alleviate some impacts that are currently occurring as a result of the general public traveling through the wetland complex on lower Burnt Mountain.

   By following pertinent mitigation measures listed in Volume I of the 1994 Snowmass Ski Area FEIS (Pg. II -54 through II – 61), adhering to Forest Plan Water and Riparian Resources standards and Watershed Conservation Project Handbook direction, any potential impacts that may occur as a result of project implementation would be expected to mitigated.

   * Wildlife/MIS –. The summary of the MIS analysis concluded that implementation of the approved projects would have negligible impacts to MIS across their habitat and range on the White River National Forest, and would have no impact on the ability of the Forest to meet the objective of improving habitat conditions for elk, snowshoe hare, and alpine willow.

   * Threatened, Endangered, and Sensitive Species – A Biological Opinion was prepared by the United States Fish and Wildlife Service in accordance with Section 7 of the Endangered Species Act (1973).
   The BO was based on the review of the Biological Assessment (BA) prepared for this project, and was in concurrence with the findings disclosed in the BA.

> * A Biological Evaluation (BE) was prepared for the proposed project to address the potential effects on wildlife and plant species considered by the Forest Service to be *sensitive* or to be *species of viability concern*. The BE led to the determination that the proposed projects would not likely result in a lack of species viability in the planning area, nor cause a trend towards Federal listing or a loss of species viability range-wide.

3) *Consistency with applicable laws, regulations, and policies* - After careful review of the Response to Comments document prepared for the Final EA, as well as the information prepared for the EA, I am confident that the analysis associated with this EA meets the intent of all of the requirements necessary under the National Environmental Policy Act, including all applicable laws, regulations, and policies, as well as public comments.

4) *Field Reviews and Subsequent Discussions* – With two complete field seasons to fully evaluate ASC's original proposed action and to perform all necessary site specific analysis, new ideas were formulated to address several issues, and were incorporated into Alternative C as modified, as well as my decision.

   *The approved higher alignment of the Burnt Mountain Traverse eliminates only a very small percentage of skiing terrain in the Burnt Mountain POD. The selected route for the approved traverse completely avoids any impacts to the wetland that would otherwise be impacted under Alternative B, the Proposed Action.

   * The approved location of a new Sheer Bliss Lift for all practical purposes utilizes an already existing lift alignment and ski trail openings for the lift corridor. It keeps the Big Burn lift in place, but reduces its need to serve as a high capacity lift. By removing chairs on the line, and slowing down the line speed slightly, wear and tear that the Big Burn lift currently experiences will be reduced significantly. By replacing the Sheer Bliss lift instead of replacing both lifts with a high speed six-passenger lift, lift redundancy will be in place in case of a lift shut-down.
   Additionally, if skier visits on any given day do not support running both lifts, the Big Burn chair can be shut down, with all of the skiing terrain on the Big Burn being accessible from the new Sheer Bliss top terminal.

**PUBLIC INVOLVEMENT**

The first ASC improvements proposal was accepted as submitted and formal public scoping was initiated during the period of February 1, 2003 through March 3, 2003.

A revised proposal was later accepted, and a subsequent formal public scoping process was initiated that requested comments during the period of May 24 through June 23 by means of a news release and legal notice in the Aspen Times Weekly.

External responses from public scoping was very limited, with only one written comment letter received from the Colorado Division of Wildlife (03/29/2004).

During the time period of May, 2003 through July, 2004, numerous summer and winter site visits to the study area were conducted by Forest Service staff, ASC personnel, consultants, and other federal and state personnel to further refine the proposed action and develop alternatives to the proposed action, as well as to perform the necessary field studies and analyses of the biological and physical aspects of the proposed actions.

A Draft EA was released initially released on December 30, 2004, and sent to all interested parties.  A news release was also published in local newspapers soliciting review and comments of the Draft EA, with a deadline for comments set on January 28, 2005.  A total of sixteen (16) comment letters were received during the initial comment period. Due to the original Decision Notice being rescinded, a second Draft EA was released on July 20, 2005, with similar outreach methods to the initial draft and final EA release being utilized.  Consistent with NEPA regulations (40 CFR 1503.4 (b)), substantive comments were identified in all comment letters received.  In cases where a comment was not substantive, but appeared to indicate that information in the Draft EA was misunderstood or unclear, a response was prepared to clarify the information (Response to Comments, Appendix F, Final EA).

**FINDING OF NO SIGNIFICANT IMPACT (FONSI)**

The Environmental Assessment indicates that:

- The selected actions will not have significant effects on the quality of the human environment, either as an individual action, or as part of the cumulative effect of other past, present and planned actions within this area.

- The selected actions do not affect public health and safety.  The project does not involve National Defense or Security.

- There are no unique characteristics of this area which would set it apart from similar areas where there is experience with this type of project. The construction and operation of approved projects will have no significant effect on historic or cultural sites or resources, park lands, or prime farm lands.

- The project area does not contain wild and scenic rivers or ecologically critical areas.

- The effects of the selected actions will not substantially alter the undeveloped character of an inventoried roadless area.

- The selected actions will have no significant effects on wetlands.

- The effects of the selected actions are not highly controversial.

- The effects of the selected actions on the human environment are not highly uncertain, nor do they involve unique or unknown risks.

- The selected actions are not precedent-setting. They do not establish a precedent for future actions which may have a significant effect on the environment. My decision is not related to any decision in principle about a future consideration.

- The selected actions will not adversely affect districts, sites, highways, structures or objects listed in or eligible for listing in the National Register of Historic Places. The selected actions will not cause loss or destruction of significant cultural, or historical resources.

- The USFWS concurred with the White River National Forest's determination that the selected actions would not affect bald eagle (Haliaeetus leucocephalus), peregrine falcon (Falco peregrinus), and Mexican Spotted Owl (Strix occidentalis lucida). The USFWS also concurred that the annual water depletions that may occur as a result of the implementation of the proposed actions would have "no effect" on the four endangered Colorado River fish; bonytail (Gila elegans), razorback sucker (Xyrauchen texanus), Colorado pikeminnow (Ptychocheilus lucius), and the humpback sucker (Gila cypha). Additionally, there will be "no effect" on the Uncompahgre fritillary butterfly.

- Canada lynx: The selected actions are not likely to jeopardize the continued existence of the Canada lynx or its habitat. This determination was made on August 20, 2004 under the conditions of the USFWS letter of concurrence for the Snowmass Mountain Ski Area Master Plan Amendment (ES/GJ-6-C)-03-F-023). The Selected Alternative is consistent with Forest Plan direction for lynx and the determinations made within this EA and it's supporting documents.

- All alternatives are consistent with the revised Forest Plan direction for sensitive species. The selected actions are not likely result in a loss of species viability in the planning area, nor cause a trend towards Federal listing or a loss of species viability range-wide.

- Based on the limited direct, indirect, and cumulative impacts to Management Indicator Species (MIS) from the selected actions, project impacts to MIS are negligible across their habitat and range on the White River National Forest. Implementation of the selected actions will have no impact on the ability of the Forest to meet the objective of improving habitat conditions for elk, snowshoe hare, or alpine willow.

- This action complies with other federal, state or local laws and requirements imposed for the protection of the environment.

Based on the findings in the Environmental Assessment, I find that this project will not have a significant effect on the human environment and is excluded from documentation in an Environmental Impact Statement.

**FINDINGS REQUIRED BY OTHER LAWS AND REGULATIONS**

All of the alternatives are consistent with management direction in the White River National Forest Land and Resource Management Plan – 2002 Revision. Implementation of the approved elements in this Decision Notice will be consistent with the Forest Plan and 8.25 Management Area Direction.

The selected alternative complies with other laws and regulations, including the National Historic Preservation Act, the American Indian Religious Freedom Act, the Native American Graves Protection and Repatriation Act, the Clean Water Act, and the Endangered Species Act.

**ADMINISTRATIVE REVIEW**

This decision is subject to appeal pursuant to 36 CFR 215.7. A written Notice of Appeal must be submitted within 45 days after the date the notice of this decision is published in the Glenwood Springs Post Independent Newspaper. Notice must be sent to:

>Appeal Deciding Officer
>Region 2, Rocky Mountain Region
>USDA Forest Service
>P.O. Box 25127
>Lakewood, Colorado 80225-0127

Appeals must meet content requirements of 36 CFR 215.14. Appeals arriving late will not be considered responsive. Evidence of timely filing will be based on the US Postal Service postmark on a mailed appeal or the time and date imprinted on a facsimile appeal pursuant to 36 CFR 215.13.C.

**IMPLEMENTATION OF THE DECISION**

If no appeal of this decision is received, implementation of this decision may occur on, but not before, five (5) business days from the close of the appeal filing period. If an appeal is received, implementation may not occur for fifteen (15) days following the date of appeal disposition.

**CONTACT PERSON**

For further information concerning this decision or the environmental analysis, contact Jim Stark, Writer/Team Leader, Aspen Ranger District, 806 W. Hallam, Aspen, CO 81611. Phone: (970) 925-3445, FAX: (970) 925-5277

_____/s/_____       _____2-16-2006_____
MARIBETH GUSTAFSON                                          Date
Forest Supervisor
White River National Forest